**In the Interest of M.D.S. and C.D.S., Minor/Plaintiffs,**

**S.A.S., Natural Mother, Appellant,**

v.

**JUVENILE OFFICER, Respondent.**

No. WD 44754.

Missouri Court of Appeals, Western District.

Aug. 11, 1992.

Christopher J. Jordan, Waltz & Jordan, Jefferson City, for appellant.

Gerald E. Roark, Hendren and Andrae, Jefferson City, for respondent.

Before SPINDEN, P.J., and TURNAGE and BRECKENRIDGE, JJ.

BRECKENRIDGE, Judge.

S.A.S. appeals from a judgment by the trial court adjudicating S.A.S.'s neglect of her daughters, M.D.S. and C.D.S., and committing them, as wards of the court, to the custody of the Department of Family Services. Mother argues that the trial court erred in assuming jurisdiction under § 211.-031.1(1)(b), RSMo Supp.1991 [1], because (1) it improperly exercised its power through defective procedures inherently prejudicial to Mother's rights; and (2) the juvenile authority failed to show by clear, cogent and convincing evidence that Mother neglected the children or otherwise failed to provide them with proper care, custody or support. The judgment adjudicating neglect is affirmed, the dispositional order is reversed and the cause is remanded for further proceedings.

As a preliminary matter, the juvenile officer contends in his jurisdictional statement that this court does not have jurisdiction over this appeal as the order appealed from is not a final order and is subject to further review in the court below. An appeal by a parent is allowed under Rule 120.01(b) "from any final judgment made under the Juvenile Code which adversely affects him." Although a temporary order and subject to modification, the order appealed from implicates "the fundamental right of natural parents to rear their own children free of undue governmental interference." *In Interest of A.L.W.*, 773 S.W.2d 129, 134 (Mo.App.1989). Such orders are reviewed pursuant to the

---

1. All statutory citations are to Revised Missouri Statutes Cumulative Supplement 1991, unless otherwise stated.

standards established under Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). *In Interest of C.L.M.*, 625 S.W.2d 613, 614 (Mo. banc 1981). The juvenile court must find by clear and convincing evidence that the child is in need of care because of the parents' neglect. *In Interest of A.H.*, 689 S.W.2d 771, 775 (Mo. App.1985).

S.A.S. (Mother), is the natural mother of M.D.S., born November 11, 1983, and C.D.S., born October 11, 1985. Mother was never married to the children's natural father, T.B. (Father). She and her daughters resided, on and off, in the home of S.A.S.'s mother and step-father (Grandparents). Mother was incarcerated several times during 1989 and 1990. During the period she was incarcerated in the Missouri Department of Corrections, the children resided with their maternal grandfather in Michigan. After her release, Mother and her daughters lived with Grandparents who then collected AFDC and day care benefits for the children.

Mother moved from Grandparents' home on Saturday, October 13, 1990, at the insistence of her sister. The children were not at home when she was told to leave. When Mother was advised that their whereabouts were unknown, she called the police. Eventually Mother left without taking the children with her. On the evening of Mother's departure from Grandparents' home, the girls told Grandmother of various incidents involving Mother, Father and Father's girlfriend.

M.D.S. told Grandmother that Mother sent her to a motel room with Father and his girlfriend, Allison, where she witnessed the two having sex. The girls also saw Mother engaged in sexual activity with two women and, on more than one occasion, saw Mother having oral sex with Father. Grandmother further testified that M.D.S. told her that Mother encouraged M.D.S. to have oral sex with Father.

On Monday, October 15th, Mother contacted the Division of Family Services (DFS) who suggested she consult an attorney. On Tuesday she contacted an attorney to prepare a habeas corpus action on her behalf seeking the return of her children. On October 18, the juvenile officer filed a neglect petition. That same day, the court ordered that M.D.S. and C.D.S. become wards of the court and placed custody in Grandparents pending investigation by DFS. Mother was given no notice of the proceedings.

On November 15, 1990, the court set aside its order of October 18 for the reason that no notice had been given to Mother. The cause was continued and the court entered a new order placing custody of the children with DFS.

Hearings on the matter were held on December 21, 1990, and January 15–16, 1991. The court found:

> The natural mother of said children has not properly cared and provided for the children in that both children have been exposed to and witnessed various heterosexual and homosexual acts and the natural mother, [S.A.S.], has permitted the children to watch television recreations of such activity inappropriate for children and that on one occasion [S.A.S.] encouraged [M.D.S.] to have direct sexual contact in her presence with the natural father [T.B.] to the point that [S.A.S.] encouraged the child to have oral sex with that adult male to the point of his ejaculation into this minor child's mouth.

> Based on all of the above, the Court finds, by clear and convincing evidence, the children are in need of protection and should be made wards of the Court.

> The Court further orders custody of said minor children to be placed with the Division of Family Services and the home of [Grandparents] is hereby approved for temporary placement of said children or, at the discretion of the Division of Family Services, said children may be placed in an approved foster care home.

Mother appeals from the trial court's order.

In Point I, Mother claims that the trial court erred in assuming jurisdiction pursuant to § 211.031.1(1)(b) because the court improperly exercised its powers through defective procedures inherently prejudicial to her rights. In her argument under Point I, Mother raises twelve specific de-

fects as error. The preservation of these errors will be addressed as required.

As two of those defects, Mother points out that the court did not allow her to be present during the proceedings on December 21, 1990, the date that testimony was first taken in the case, while Grandmother was allowed to be present during C.D.S.'s testimony on that date. Mother further claims that the proponents in the case were Grandparents rather than the juvenile officer. Mother cites *In Interest of W.J.D.*, 756 S.W.2d 191 (Mo.App.1988), for the proposition that the petition invoking § 211.031 can only be filed by the juvenile officer and such proceeding is predominantly an inquiry by the State.

It appears that the involvement of the juvenile officer in these proceedings was cursory, at best. The initial petition in the case was prepared by Grandparents' attorney and signed by the juvenile officer. In his brief, the juvenile officer refers to his signing and filing the petition as a ratification; that Grandparents' attorney acted as an agent of the juvenile officer. The juvenile officer was not present on December 21, 1990; the hearing was commenced without his presence by the consent of the parties. He was present at the continuation of the hearing on January 15 and 16, 1991. It appears from the record that the juvenile officer permitted Grandparents' attorney to proceed with the hearings on his behalf. The transcripts provided to this court clearly identify Tina Neff, Grandparents' attorney, as the representative of Grandparents. She called witnesses, examined and cross-examined witnesses. The juvenile officer did not call witnesses or cross-examine those called by other parties.

■ Mother failed to object to Grandparents' participation in the proceedings and the juvenile officer's lack of participation. By her failure to object, she acquiesced in the manner in which the case proceeded. She also did not object to the presence of Grandmother during C.D.S.'s testimony, nor her own exclusion from the proceedings although her attorney requested that she be present. Under Rule 117.02, the trial court acted within its discretion in allowing Grandmother to be present at the proceedings. No abuse of this discretion has been demonstrated. As to Mother's exclusion, Rule 117.01(d) authorizes the trial court to exclude the juvenile's custodian from part of the hearing, if it is in the juvenile's best interest. Since Mother did not object that her exclusion was not required by her daughters' best interest, she did not preserve any error for review. An appellate court will not consider a claim of error in a civil appeal unless it was first presented to and ruled upon by the trial court. *In re Marriage of Wardlaw*, 809 S.W.2d 470, 473 (Mo.App.1991). Furthermore, because this should be a state, not a private proceeding, *W.J.D.*, 756 S.W.2d at 195, Grandparents' usurpation of the juvenile officer's role in the proceedings was highly irregular and looked upon with disfavor by the court. However, Mother's acquiescence, by consent and her failure to object, leaves nothing for review. *Id.;* Rule 84.13.

Other errors complained of by Mother in the argument portion of her brief, without supporting citation, are the failure to establish the competency of the children to testify, the admission of hearsay evidence, the consideration by the court of unsworn statements by Grandparents' counsel, the failure to bring the matter to a quick hearing and the denial of visitation to the Mother under the November 15, 1990, protective order. All of these alleged errors are raised in violation of Rule 84.04(d), and should not be further considered by this court. *In re Marriage of Riley*, 817 S.W.2d 644 (Mo.App.1991). However, given that this is a juvenile case involving the best interest of the children, the court has reviewed these claims for plain error under Rule 84.13(c). They are found either to be without merit or not to result in manifest injustice.

Mother next claims that the children were made wards of the court without a dispositional hearing and that the court erred in placing the children in the custody of Grandparents without notice to her. Mother focuses on the language of the October 18, 1990, order making the chil-

dren "wards of the court." She suggests use of this terminology is evidence that the trial court made an adjudication of neglect and assumed jurisdiction of the children, without notice to her or a hearing.

The trial court on November 15, 1990, set aside its order of October 18, 1990, for the reason that no notice had been given to the custodial parent. On that date, clearly after Mother had notice, the court entered a second order assuming custody of the children. Contrary to Mother's assertion, it is clear from the nature of the proceedings that both on October 18, 1990, and on November 15, 1990, the trial court was not making an adjudication on the merits of the petition by entering an order for custody of the children. The court intended to place the children in protective custody as contemplated by Rule 115.03 or § 211.131, even though the procedure did not fully conform.

■ Section 211.131 and Rule 115.03 permit custody to be ordered upon the filing of a petition, without prior notice to a custodian and pursuant to an ex parte request. Section 211.131 provides that a child may be taken into custody if found to be "without proper care, custody or support." This statute provides that the parent shall be notified as soon as possible. Section 211.131.2. Jurisdiction of the court attaches from the moment that the juvenile is taken into custody. Section 211.131.3. Rule 115.03 permits a court order for protective custody when the juvenile is without proper care, custody or support and when immediate protective custody is necessary to prevent personal harm to the juvenile. Notice of such order is to be endorsed upon the summons issued. Rule 115.03. Mother cites no valid authority for her claim that defects in a protective order of custody would void the balance of the proceedings.[2] Defects in the procedure utilized by the trial court were raised by Mother prior to the dispositional hearing and subsequently

corrected in a timely manner. Mother is not entitled to any further relief.

■ Mother also contends that the trial court's failure to allow a DFS home study into evidence was error. Rule 119.05(d) provides, "If the allegations of the petition are denied, the social study shall not be considered by the court prior to the determination whether the allegations of the petition have been established by Rule 119.02a(7)." When the trial court refused to allow the DFS report into evidence, it ruled that on the basis of 119.05(d) the report was not admissible at that time. Mother's citation of *In Interest of B.L.E.*, 768 S.W.2d 86 (Mo.App.1988), is inapposite. *B.L.E.* was a termination case wherein DFS records were admitted into evidence under the business records exception to show the conditions under which the juvenile was initially brought under the jurisdiction of the juvenile court. *Id.* at 92. It did not address Rule 119.05(d), which expressly prohibits the court from considering the study prior to the establishment of the allegations of the petition. In the instant case, no further attempt was made to enter the home study into evidence. At the end of the hearing, the trial court announced its intention of ordering an updated home study by DFS without any objection from Mother. It did, in fact, order a further study which is proper under Rule 119.02(a)(8).

■ Finally under Point I, Mother argues that the trial court erred by failing to make findings pursuant to § 211.183.5, as required prior to removal of custody from Mother. A determination under § 211.183.5 is a precondition to any order of disposition in a juvenile proceeding which removes a child from its home. *In Interest of A.L.W.*, 773 S.W.2d 129 (Mo.App.1989). An order of removal must be preceded by a finding that removal of the child was necessary to protect the child, a determination that reasonable efforts have been made to avoid the need for removal from the home,

**2.** Mother cites *In Interest of D.J.B.*, 718 S.W.2d 132 (Mo.App.1986), as authority for a finding that procedural deficiencies in neglect proceedings void the proceeding for lack of jurisdiction. The defect in the neglect proceeding, recognized by the court in a subsequent termination action, was that the petition was insufficient as a matter of law. There are no claimed defects in the case at bar which would result in a lack of jurisdiction.

and a detail of the evidence on which those findings rest. *Id.* at 132–33. The record is devoid of any findings under § 211.183.5. Therefore, the dispositional order which transfers custody of the children from Mother is set aside and the cause remanded to the juvenile court for statutory findings in compliance with § 211.183.5.

■ The reversal under Point I affects only the dispositional order not the adjudication of neglect. Therefore, it is necessary to address Point II, because Mother challenges the adjudication of neglect upon which the court assumed jurisdiction. In her Point II, Mother argues that the juvenile authority failed to prove neglect by clear, cogent and convincing evidence, thus the trial court erred in assuming jurisdiction. Deference is given to the judgment of the trial court and its judgment will be sustained unless there is not substantial evidence to support it. *In Interest of K.H.,* 652 S.W.2d 166, 167 (Mo.App.1983). The trial court found that Mother had not properly cared and provided for the children in that they were permitted to watch television recreations of activities inappropriate for children; that they witnessed homosexual and heterosexual acts; and that Mother encouraged M.D.S. to have direct sexual contact with Father. Such conduct amounts to neglect as it constitutes a failure by Mother "to supply the minimum quality of care which the community will tolerate." *In re C F B,* 497 S.W.2d 831, 837 (Mo.App.1973).

The finding that the children were exposed to inappropriate television is based upon testimony given by D.B., the children's step-grandfather, who testified that he and Grandmother visited Mother and the children in August, 1988, at Mother's apartment before she and the children moved in with Grandparents. D.B. testified that when they arrived Mother was watching a porno film with the children showing a man and woman in bed having a sexual relationship. Grandmother expressed concern over the content of the program and Mother replied "Well, mom, they have to learn about it sometime."

There is substantial evidence supporting the finding that the children were exposed to heterosexual and homosexual acts. M.D.S. testified that she saw Father and Allison have sex, including oral sex, and that Mother was present. She further testified that she saw two women having relations in the presence of Mother and Father. C.D.S. testified that she saw Father and Mother have sex together while she was in the same room with them and that she saw Mother engaged in oral sex with Father.

Grandmother was allowed, over objection, to testify as to what the children told her.[3] Grandmother testified that M.D.S. told her that she (M.D.S.) was present when Father and Allison engaged in sexual relations; that she had seen Mother and two other women engaged in lesbian sexual activities; that Mother encouraged M.D.S. to perform oral sex with Father and M.D.S. did so; and that the children were present while Mother had oral sex with Father.

Viewing the above evidence in the light most favorable to the trial court's finding and giving due deference to the trial court's opportunity to judge credibility, *In re J.L.L.,* 402 S.W.2d 629 (Mo.App.1966), it is apparent that substantial evidence exists to support the trial court's order and the adjudication of neglect is affirmed.

The dispositional order removing custody of the children from Mother is reversed and the cause is remanded for further proceedings.

All concur.

---

3. Mother claims error in the admission of hearsay during Grandmother's testimony. This alleged error was not properly briefed pursuant to Rule 84.04(d), but was reviewed for plain error under Point I. The court found none. In reviewing a court-tried case, this court considers only that evidence which was properly admitted. *Keen v. Dismuke,* 690 S.W.2d 822, 825 (Mo.App.1985). Even without Grandmother's testimony there remains adequate evidence in the record to support trial court's finding that the children are in need of protection.