Catherine CAMDEN,
Petitioner/Appellant,

v.

Ronald CAMDEN, Respondent.

No. 61175.

Missouri Court of Appeals,
Eastern District,
Division One.

Oct. 27, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied
Dec. 3, 1992.

Application to Transfer Denied
Jan. 26, 1993.

Susan M. Hais, Theresa Counts Burke, Summers, Compton, Wells & Hamburg, St. Louis, for petitioner/appellant.

Gerald M. Dunne, St. Louis, for respondent.

AHRENS, Presiding Judge.

Wife appeals from the trial court's denial of her Motion and Affidavit for Maintenance, Attorney's Fees, Suit Money, Injunction, and Restraining Order Pendente Lite. We affirm.

A hearing on wife's motion was held June 3, 1991. Wife and her attorney were the only witnesses called to testify; husband presented no evidence. On the date of the hearing, husband and wife had been married thirty-one years. Four children were born of the marriage, all of whom were emancipated at the time of the hearing.

The record reflects that husband at the time of the hearing was employed as a photographer at the Defense Mapping Agency Aerospace Center in St. Louis. Husband's statement of income and expenses reflects an after-tax biweekly income of $1,029.52 from this employment. The statement also indicates husband earns an additional $1,036.00 in average gross monthly wages from umpiring, although wife testified that figure represented husband's annual income from such work. Husband's estimated expenses average $1,769.73 per month.

At the time of the hearing, wife was living with her sister, and husband was living in the marital residence. Wife is a high school graduate with an after-tax income of $954.98 per month from her full-time clerical employment at Community Dialysis Center in St. Louis. Wife testified the parties' children were her primary responsibility throughout the marriage, and that she had not developed employment skills sufficient to acquire a higher-paying job. Although wife has not attempted to locate a different job or look for part-time work to supplement her income, she has enrolled in a community college intending to pursue a nursing degree. Wife testified that her college tuition is $34.00 per credit hour, and that she did not include these costs on her statement of income and expenses. Upon cross-examination, wife testified her employer would reimburse her for part of the tuition.

Next, wife testified at length concerning the expenses listed in her statement of income and expenses. Although wife testified she could live on $2,000.00 per month, the statement estimated wife's average monthly expenses at $2,438.00. This figure included $450.00 per month for food,

$250.00 per month for clothing, and $360.00 per month for holidays, birthdays, graduations, and gifts. The figure also included $100.00 per month in credit card payments, although upon questioning by the court, wife testified her total credit card debt was $100.00.

Wife's statement also listed monthly payments of $250.00 for the mortgage on the marital home, $237.00 for utilities, and $101.00 in real estate taxes; however, these expenses were associated with the marital home which wife no longer occupied at the time of the hearing. Wife testified her income and expenses statement reflected "a statement of income over the last year. I thought that's what it meant, our expenses for the last year. I didn't think it meant what my expenses were after I left him [husband]."

Wife has made no rent or mortgage payments since leaving the home, except for payments to her sister and brother-in-law of "what [she] can afford to give them," presumably for rent. Wife testified that apartments located in the area where she works rent for approximately $350.00 per month, and that she believed the mortgage and utility payments listed on her income and expenses statement would approximate the rent and utility costs she would incur at an apartment. Wife also testified she would need renter's insurance, disability insurance to supplement her employer-provided health insurance, and $25.00 per month for prescriptions and other uncovered medical expenses. Lastly, wife testified that on her current income, she could not afford to purchase eyeglasses, repair her car, or pay her attorney's fees.

In addition to the marital home, the parties owned twenty acres of land in Wayne County, Missouri; a lot in Arkansas; a one-quarter ownership interest in a $74,000.00 farm in Missouri; and various motor vehicles. Further, the parties had several bank accounts, certificates of deposits, life insurance policies, bonds, an I.R.A. account, modest stock holdings, and husband's Civil Service retirement plan. Wife testified that after she left, husband removed her name from all the parties' accounts; wife further stated that at the time of the separation, she had only a $900.00 savings account listed in her name, the balance of which she had depleted at the time of the hearing.

Finally, wife testified that husband abused her emotionally during the marriage and physically at the time of the parties' separation. Wife stated that on the night she left the marital home, husband pushed her and choked her until she was unconscious. Upon cross-examination, wife testified that prior to the choking incident, the parties had "discussed" money, some missing checkbooks, and a man with whom husband accused wife of having an affair.

Wife testified that on the night she left husband, she gave a male coworker a ride home from work, and they stopped at a bar. Wife admitted she loaned her "boyfriend" $200.00 that night; later, she denied she had a "boyfriend." Further, wife testified she had "stayed" with the male coworker but later testified she had not spent the "night" at the man's house, but had only spent the "evening" with him. Wife denied she has had an "intimate relationship" with the man and testified she did not have sexual intercourse with him prior to the date of the parties' separation.

Wife's attorney, Susan Hais, testified with respect to wife's claim for attorney's fees. Hais testified she charges $150.00 per hour. Further, Hais testified she was paid a $1,000.00 retainer by wife's sister, and there remained a $1,309.00 balance due for legal services as of the hearing date. The court received an exhibit of time records itemizing the fees.

After considering the record, the testimony, the evidence, and the proposed findings of fact and conclusions of law filed by both parties, the trial court denied wife's PDL motion on September 3, 1991. We discuss the court's specific findings and conclusions in our consideration of wife's allegations of error.

■■■ We will uphold the trial court's order denying wife temporary maintenance and attorney's fees unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976).

The court's discretion in awarding temporary maintenance and attorney's fees pendente lite is broader than at the dissolution hearing, *Oesterle v. Oesterle*, 796 S.W.2d 640, 641 (Mo.App.1990), and "[a] reviewing court is extremely cautious about altering judgments regarding such allowances because they are temporary and their effects do not extend beyond the final hearing of the case." *Cross v. Cross*, 790 S.W.2d 928, 929 (Mo.App.1990).

■ Section 452.315 RSMo 1986 authorizes a court to issue orders on motions for temporary maintenance. In determining whether an award is warranted, the court must consider the factors enumerated in § 452.335 RSMo (Supp.1991).[1] *Oesterle*, 796 S.W.2d at 641. The trial court has broad discretion in applying these factors; further, it determines the witnesses' credibility and evaluates the merits of each party's expense claims. *Eckstein v. Eckstein*, 748 S.W.2d 945, 946–47 (Mo.App.1988).

■ "To satisfy the threshold issue of her entitlement to maintenance wife had to show 1) she lacked sufficient property to provide for her reasonable needs and 2) that she was unable to support herself through appropriate employment...." *Cross*, 790 S.W.2d at 930. In support of her motion, wife relied solely on her own testimony and the parties' statements of income and expenses. However, the court in denying wife's motion specifically found wife "elusive in her testimony" and lacking in credibility. We defer to the court's assessment. *Rapp v. Rapp*, 789 S.W.2d 148, 150 (Mo.App.1990).

Further, we find substantial evidence to support the court's finding that wife likely inflated her expenses and understated her earning ability and financial resources. As noted earlier, wife included in her statement expenses associated with the marital home which she no longer occupied. Furthermore, the court could have considered the expenses wife listed for food, clothing, and holidays excessive. With respect to wife's financial resources and needs, the court specifically noted that wife was able to loan $200.00 to a friend and that she was receiving support money from third parties. Moreover, the court stated it was unable to determine that wife had any needs she could not have met, and indicated that wife may not have been employed at her fullest ability. The record supports these findings. On this record, wife has failed to prove she is entitled to temporary maintenance.[2]

■ Lastly, wife contends the trial court erred in refusing to award her attorney's fees. In making this determination, the court has considerable discretion and must base its decision upon a consideration of all relevant factors, including the par-

---

1. Section 452.335.2 RSMo (Supp.1991) requires a court entering a maintenance order to consider "all relevant factors," including:

"(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The comparative earning capacity of each spouse;

(4) The standard of living established during the marriage;

(5) The obligations and assets, including the marital property apportioned to him and the separate property of each party;

(6) The duration of the marriage;

(7) The age, and the physical and emotional condition of the spouse seeking maintenance;

(8) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance;

(9) The conduct of the parties during the marriage; and

(10) Any other relevant factors."

2. We reject wife's contention that the trial court in refusing to award maintenance failed to consider the parties' financial resources, the time necessary for wife to obtain the education and training required for her to find appropriate employment, the parties' comparative earning capacities, the duration of the parties' marriage, wife's age, the parties' obligations, husband's ability to meet his own needs while meeting wife's, and husband's alleged misconduct. The court expressly stated it considered all the factors listed in § 452.335 in determining whether to award wife maintenance, and nothing in the record indicates otherwise.

ties' financial resources and conduct during the marriage. *Bixler v. Bixler*, 810 S.W.2d 95, 102 (Mo.App.1991). Although husband's income exceeds that of wife, the disparity is not sufficient to indicate the court abused its discretion in refusing to award wife the fees. *See Stelling v. Stelling*, 769 S.W.2d 450, 454 (Mo.App.1989). Further, the parties' financial resources are not a controlling factor in determining whether an award is warranted; rather, the resources are only one of other relevant factors to be considered. *Plunkett v. Aubuchon*, 793 S.W.2d 554, 560 (Mo.App. 1990). The court expressly stated it considered all the factors in § 452.355 RSMo (Supp.1991)[3], and nothing in the record indicates it failed to do so. We have reviewed the fee statement and find no abuse of discretion in the trial court's refusal to award wife attorney's fees.

The judgment of the trial court is affirmed.

CRIST and REINHARD, JJ., concur.

---

**3.** Section 452.355.1 RSMo (Supp.1991) provides in pertinent part: "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after entry of judgment...."